We'll call this first case of United States of America v. Antoinette Adair. Correct. Ms. McGrain. Your Honors, would you prefer I remove my mask while I argue? I'll leave that to you, whatever you're comfortable with. We'll be vaccinated. All right. Yes, sir. Good morning, Your Honors. May I please support Julie McGrain, Assistant Federal Public Defender, on behalf of the appellant Antoinette Adair. I would like to please reserve three minutes for rebuttal. Granted. And I would like to ask the court, do you have a preference for which enhancement I begin with? The time is yours. Okay, great. In this case, Antoinette Adair was admittedly a drug dealer. She sold and purchased Oxycontin and oxymorphone in the Pittsburgh area. She admitted to her guilt by pleading guilty to 10 counts of the indictment in an open plea. And she did that in a timely fashion. When it came to sentencing, she, through her counsel, preserved five objections to the enhancements under in the pre-sentence report. The two that are at issue here are the leader organizer enhancement and whether or not she should have received the third point for acceptance of responsibility. So begin with the leader organizer enhancement. 3B1.1A provides for a four-level enhancement if a defendant is a leader or organizer of a criminal activity involving five or more participants or is otherwise extended. There's no dispute about the five or more number, is there? There is no dispute about that. Okay, so that predicate is dealt with, so we've got other considerations here that are very fact-bound. Correct. And there are lists, the guideline itself does not define what constitutes an organizer or a leader. But the commentary to the guidelines provides a laundry list of factors that the court can certainly consider in determining whether or not an organizer or leader is appropriate. Let me stop you at that point because I think as we go through arguments here from both sides, it might be worthy of all of our attention to concentrate on what the commentary speaks to. And it struck me as I looked at this case a second or third time that there may be and may have been here an overemphasis on the use, if I may say it, of nouns, of terminology that characterizes the defendant as being a broker. In some cases, and the guidelines speak to this, a kingpin. Throwing terms like that around are not dispositive and they may even be unhelpful. I'm interested in hearing from both sides on that. But all of which is to say that is it maybe verbs we need to be looking at more often? That is, expressions of the actual activity engaged in by the person who is a leader or organizer or alleged to be. Yes, Your Honor. I absolutely agree that it's probably verbs that we should be talking about. Because you will see in the government's briefing and in the court's finding of facts, they both refer to Ms. Adair as a broker. And in the cases that I cite about why... That doesn't get us very far, does it? I mean, it doesn't get the government very far, does it? I mean, there are brokers who are nothing more than salespeople. Correct. And that's when I'm talking about broker or middleman or conduit, and when the cases that I am relying on... Conduit doesn't get the government very far either, does it? And that's what I think that Ms. Adair was. And what I would point to is the laundry list of factors in the commentary is helpful and the courts rely on that. But this court in Helbling and in Winn talked about the fact that the leader-organizer enhancement can be applied only when a defendant exercises some degree of control over others in the commission of the offense. And she didn't? It's my position that she did not, Your Honor. She even used her mother. She even deployed her mother, didn't she? To a doctor. So that's the question. The court found for purposes... It's also a question that was answered by Judge Hornag, wasn't it? Well, for purposes of the drug quantity, the judge stated that the evidence was insufficient to prove by a preponderance of the evidence that she sent her mother or her sister or these 12 other participants, unknown, unnamed participants, to Dr. Herndon and did not count that in the relevant conduct for purposes of the drug quantity enhancement. But then the court turned around and relied on the fact that she ostensibly recruited 12 people for purposes of applying the leader-organizer. Well, yeah. In fact, she used some rather colorful language in her description of her blank, obviously, people who were working for her, right? Well, she said a lot of things, Your Honor, and we have to remember that Ms. Adair is a drug addict, a drug user, a drug seeker, and she said a lot of things. All right. But there were credibility determinations made by the district court, were there not? There were. We have to defer to them. And, counsel, you just spoke of recruiting. Now, isn't that one of the very significant verbs when we are considering who a leader is? She did recruit, what is it, 10 people at least that she acknowledged herself at one point. So, Your Honor, recruitment, yes, is absolutely a factor to consider. And the only evidence we have of recruitment in this case is her statement that she made on a recorded phone call. When she was interviewed about that by the FBI, or the agents in this case, she walked back her statements a little bit. And the court found with the leader-organizer enhancement that, yes, I believe she recruited 12 people. But, again, that finding was inconsistent with the fact that the court found that information not credible for purposes of finding the drug quantity. I would also submit that... Why is that not relevant? Because the drug quantity is for a separate aspect of the sentencing. Recruiting is a significant factor in the leader-organizer consideration. And I don't find it incongruous that you would not consider one issue when you were ruling on the other and vice versa. So even if we accept that she recruited 12 people as part of the relevant conduct, she was not what we would consider a typical drug dealer. As the court... Let me just pick up there. You argue that she doesn't qualify as a leader or organizer, whether those two terms mean the same thing in essence. Other circuits and our circuit aren't always on the same page, at least with what they say. But do you at least think that she would qualify as a manager or supervisor, or do you think that she wouldn't qualify for even that adjustment? I don't think that she would qualify for even that adjustment. What we have here is a person who was seeking drugs from other people when she needed them, selling drugs to other people when she needed money. Everybody that she sold to or recruited from knew nothing about what she did with those pills. All of the people that she sold... One level though, doesn't that counsel for her having a greater role if she can ensure that others know less and less and less about a transaction or a scheme? Doesn't that indicate that she knows more and more and more and therefore has more and more and more control over that scheme? But control, your honor, is I think what the operative is here. She didn't control anyone. The women who sold pills to her, those women decided how many pills they were going to sell, when they were going to sell them, and how much they were going to sell them for. One of the women, Marian Randolph, who was selling pills to Adair, eventually figured out that she could make more selling them directly to Mr. Richardson and other people. Control as that term is used in our calculus here doesn't require, as I understand it, that there is a complete eradication of free will on the part of people who are acting, does it? I mean, they may have a certain amount of decision making of their own, but there can still be a measure of control over the troops, which is what Judge Hornak, as I understand it, found occurred here. So when we look at something like control, it's telling people in a typical drug dealing case, the person in control would set the price of the drugs, would set some sort of time frame of when and where. Doesn't the record also show that she derived a more substantial amount of the profits? The record doesn't show much about profits at all. There was no money ever recovered. Much or anything? I don't think it shows anything, your honor. There's talk about how much she was theoretically making from what the price was set for the how many pills she was getting. There was no money ever recovered. There were no ledgers. There was no cash. There were no indicia that are typical to drug dealing conspiracies. But just to tease this out, though, our case law sometimes creates blurs, maybe leader and organizer, at least for one purpose, to recognize that they have a common element, the exercise of some degree of control. Now, whether that's the only common element and whether there are separate branches as other circuits have held after that may be an open question. Maybe it's not an open question. But one of the things that our case law kind of almost fills the gap in that space, almost for the organizer category, is it recognizes the significance, as Judge Roth picked up on, I believe, of recruitment. And how recruitment, which might be more in the organizer space as we think about this than than the leader space, but recruitment as a means of satisfying control does seem to be really well grounded in our case law. And because it is and because of the standard of review on which we look to review this case, it strikes me that that all counsels against your client on this, on this point. What's your strongest kind of pushback to that? That recruitment is only one of the many factors that you haven't challenged it, have you? I mean, you didn't challenge it in your brief. I'm looking at page 14 to 15. Your Honor, the only basis that I have to challenge it on the court found recruitment. And it's one factor that the court gets to look at. And if you don't challenge it, you don't challenge that. I challenge it on the basis that the court was inconsistent when it decided that it could rely on 12 people for recruitment, but it wasn't sufficient to rely on it for purposes of the drug quantity, that that information, the only evidence of that was Miss Adair's own statement. There was nothing else. And recruitment, if she sent 12 people to Dr. Herndon, she absolutely said that. But the court also said at sentencing, was she boasting? I don't know. I'm not sure about that. But that's where the standard review kind of takes over, right? I mean, I get it that, you know, a lot of times it's sentencing. And in other events, there's going to be evidence that doesn't gel perfectly. And once a district judge makes a decision, then they get a benefit of a standard review where we're looking at that. And then we say, well, look, they had a reason that they explained for that recruitment finding. And then when it's a multi-factor approach, we also give them some discretion in the weight that they give each factor. And at least our case law in the organizer context gives that in the kind of organizer, you know, ask, quote, because we haven't always distinguished, gives recruitment a lot of weight. And so it's hard to say that we can second guess a district court's finding of fact. And it's also really hard to say that we can second guess the amount of weight that the district court gave that fact by our case law. And that puts your client in a bit of a box as far as the plus four that she received on appeal. Yes, I would just again point to the cases out there, which we don't have any in this circuit that talk about this middleman, that talk about how someone who essentially just acts as a conduit for selling and buying without any sort of hierarchy or organization or providing any sort of control. Well, if that's what the record, in fact, showed, I would agree with you, which is why I began my inquiry by listing a couple of terms which are essentially conclusory, but a person has actually done more of this enhancement. But let me ask Judge Roth and ask Judge Phipps if they have further questions on this particular enhancement, because we've already used more than the time normally allotted in good Third Circuit tradition by not listening, by not paying attention to the clock. But we have certainly questions to ask on the acceptance of responsibility. I have a quick question, if I could, in the element of control. The gun, of course, is a factor in and of itself, but it's not the use of the gun and the carrying of the gun, an indication of control in this situation. Well, Miss Adair herself never used or carried a gun. She certainly talked about it, and that's why the firearm enhancement applied. Mr. Zurich had a gun with him when he drove her on two different occasions, but dropped her off before she engaged in any drug transaction. And as far as what the confidential source said in the relevant conduct aspect of it, the confidential source had his own problems, that he was also an addict. He took money from the government. So this is basically an element of credibility. And is it a problem that the district judge believed this? I mean, we need to move on. But I just want to make that point that I think that the question of the gun and the credibility of the statement about the gun is an important factor to consider in control. Yes, Your Honor, I would agree if Miss Adair was carrying a firearm with her and using that, that would be something that might be considered for purposes of control. All right, let's let's turn to the acceptance of responsibility issue, the 3E1.1 issue and begin with what's the standard of review? What about plain error? Absolutely, Your Honor, it's our position that the objection was properly preserved. Federal Criminal Procedure 51B says that you preserve a claim by informing the court when and when the ruling is made or sought of your objection and the grounds for your When was the one point discrete issue ever specifically raised at the district court level, at sentencing, beforehand, whenever? It was raised twice, Your Honor. First, the one point, the one point. Yes. In the pre-sentence report in paragraphs 50 and 51, the probation office calculated a three level reduction for acceptance of responsibility. So everyone was on notice that the probation officer's position was that she qualified for all three points. In the briefing prior to the sentencing hearing, and I'm sorry, at the sentencing hearing, the defense counsel argued and made his position known that Judge, the government had gone through, here are the things that are at issue and defense counsel pushed back and said, no, Your Honor, what's at issue is she should not be denied three points for acceptance of responsibility simply because she challenged some sentencing enhancements. And again, those three points have been awarded in the pre-sentence report. So everyone was on notice that we had three points at issue. But there is a distinct difference procedurally between subsection A and subsection B, isn't there? Yes. OK. You know, speaking for myself, I can see that A is not the two level reduction is not an issue, but I'm still straining to see where specifically the one point, the sub B, has been preserved. So at the sentencing hearing, when the defense counsel objected, again, in post hearing briefing, in when the parties submitted their tentative finding of findings of fact and the conclusion of law, defense counsel renewed the request for a three level reduction, appendix page 460. And it was appendix page 235 where counsel asked at the sentencing hearing. Actually, it's it's page 460 that I am specifically focusing on and I can't seem to right at this minute, the 460 I have is not the one I wanted. But but I recall some rather pejorative language being used by counsel for the defendant that this was patently absurd and ridiculous, which isn't, in my view, the most specific way of raising an objection. But tell me where on page 460 and what was said there. At the bottom of the page, counsel says the firearm enhancement should be denied for the reasons set forth, resulting in an advisory guideline range of imprisonment of 46 to 57 months, incorporating a three level reduction for acceptance of questions when we talk preservation. And they fall, as I think of it, into two categories. One is when and the second is kind of what what did you do? Did you preserve an issue? Did you preserve an argument? All of these things. And there's counsel advocates often advocate. Not every form of advocacy is issue preservation. Not every form of advocacy is making an argument. There are things that can be said that are really good advocacy, but they don't constitute a legal argument, at least for purposes of preservation. And so what I see in these record sites is is advocacy, but I don't see that advocacy rising to the level of being argument preservation. It's not clear to me if this patently absurd is based on a reading of the commentary, the text of the guideline itself, the due process clause. I'm not sure. Many, many, many other things. I'm not sure what the so patent about the problem other than it's disagreed with. And at one level, that's fine from an advocacy perspective. But when we double back around and say what got preserved, not all advocacy gets preserved as either an issue or an argument. So just explain to me, just walk me through what you think the argument is. Is it that the commentary was misread, that the guideline itself was misread? Is there a constitutional problem here? What is the argument that was preserved? Because I'm missing argument preservation. I see advocacy, but I don't see argument preservation. Absolutely, Your Honor, and I would point to how the district court responded to these arguments to show how the district court seemed to understand exactly what defense counsel was saying, is that you can't deny acceptance of responsibility where someone contests sentencing enhancements. And the district court said, gave the two points in its tentative finding of facts and conclusion of law, but said, I can't give the third point because the government hasn't moved for it. And if that had been all that had been said, I agree that there might have been an issue about what the court's understanding was. But then at the sentencing hearing, the court says that if Adair had, that Ms. McGrane, if she had elected to remain silent on, in the face of the enhancement arguments, the work the court and the government would have to had, would had to do in all likelihood, still would have to have been done. And that goes exactly to the language of the third point under subsection B, which talks about conserving the government's and the court's resource. Ms. McGrane, you know, following up on the good point, that very robust point that my colleague has made, Judge Phipps has made, with respect to the distinction, the differences between advocacy and error preservation, I look at the end, almost the virtual end of this proceeding. And Judge Hornak asks then after, I think actually there were, what, two days worth of hearings held in this matter. Is there any objection to the procedural reasonableness of the sentences imposed? And of course, this was, we're dealing with procedure here. And as I indicated earlier, some specific procedural requirements that have been set out in part as a result of Protect Act here. And the answer is from defense counsel at that time, no, Your Honor. I mean, I'm seeing virtually nothing done. I've wondered about the availability, which would seem to exist here, for the defense always to itself file a motion drawing the attention of the court to the case, especially when the government has not made, per the guidelines, a motion. It seems to me the record is devoid of just about anything suggesting preservation at this point by the defense. The district court had already said three times in the sentencing hearing that all of the issues you raised are preserved. So I'm not sure that not making another objection at the end of the hearing was something that was . . . Okay. So what did the district court do wrong here? Because there's no question, there was no motion from the prosecution. Absolutely. The plain language of 3E1.1B specifies that the only time that the government can withhold the third point is when it's a purpose related to trial. When the defendant has not timely pleaded guilty in a way that helped the government avoid preparation for trial. The plain language refers only to the prosecution resources saved when a defendant is a timely guilty plea permits the government to avoid preparing for trial. Application note six was amended in 2013 in light of the Protect Act. And the sentencing commission specifically looked at congressional intent in enacting the Protect Act and said, we find nothing in the congressional language or the language of the Protect Act that would show us that Congress made clear that the interests identified in 3E1.1 are meant to constrict a government's discretion when the purpose for withholding is not related to trial preparation and the conservation of resources. Well, let me just say that because, you know, the last, as we get into the very long subsection B, it references two things. And I guess we get to this really interesting question of how should we reference these two things? I totally see where you say, thereby permitting the government to avoid preparing for trial. There was no trial here. But the flip side is, it also says, and permitting the government and the court to allocate their resources efficiently. And so to the extent that there's some, I guess, concern on the government's behalf that its resources, in lieu of a sentencing hearing, would have to be allocated less efficiently than otherwise. And for that reason, they didn't want to move for this last point. Does this rule say they can't do that? Or does this, I mean... So the plain language of 3E1.1B does not specifically say that. And so because it's ambiguous, we look to the commentary and the commentary tells us that this is what Congress intended, this is what the sentencing commission intended, was that it be limited to trial considerations. So when amendment 775 was added, the commission considered not only... Do we even get to that? If the guideline, through its clear language, requires a motion from a government, I mean, I don't think Congress could have been much clearer in its directive that there needed to be a motion. We don't always see Congress say as it did with the PROTECT Act, in so many words, and sentencing commission, don't you dare try to change this. They meant what they said. They did mean what they said, and they included the language, preparation for trial and conservation of government resources. So just to tease this out, it seems to me that what you're, I mean, there's a really strong form of what you're advocating, and I think what the strong form is, is that anytime there's a guilty plea that avoids trial, the third point must be given. I mean, if we go your way, there is now a bright line rule and reading of this provision to say, upon a guilty plea, three points for acceptance for responsibility must be done regardless. And this is where you're a little bit in tension with the text of the guideline of whether the government moves or not. And if that's what Congress ratified when it did that, why didn't it just say that? Why didn't it condition it on a government? Why did it condition it on a government's motion? It seems that, and I guess what I'm saying is, it seems that the reading you're advocating may make sense from the second half of section B, but it renders the first half of section B more or less superfluous. Why bother having two subsections if you're entitled to three points? Let me ask a related question. Is it not, in fact, the position of the government that the two points should not have been awarded? Yes, Your Honor. The government does not think the two points should have been awarded. Is it not justified in not asking to award the third point when the district court goes ahead and over the position of the government awards two points? Does the government have to then move for the third point? That seems a bit incongruous. The government doesn't have to move for the third point, but the district court can override the government's failure to move when the government's for not moving is based on an improper, um, consideration, which in this case has nothing to do with trial preparation. And so the, so you're saying proper consideration, if it's the government's position, the two points should not have been awarded to then not move for the award of the third point. I find that incongruous. No, you're so Your Honor. If, if the government doesn't agree that acceptance of responsibility should have applied at all. And the government did not agree that acceptance of responsibility should have applied at all. So they wouldn't have given you the two points under subsection A, right? Right. But that's not their decision. It's the court's decision and the court granted her that, um, granted her that, that, uh, those two points. So then the question is the government is upon motion and the reason that Congress made it the government's motion is because Congress said that the government is in the best position to determine whether or not the defendant timely pled guilty in a way that avoided them preparing. Let, let me ask because we have taken as much time and rightly so. Uh, uh, but I, I'm sure Mr. Kokos doesn't want to feel like he's a potted plant here and that we do afford him an opportunity to speak. So, uh, Judge Roth, uh, anything further on this and, uh, to, to be followed then by Judge Phipps for the question, I have nothing for this. Thank you. Uh, either direction. All right. We'll have you back. You reserved how much time? All right. Thank you very much. Uh, Ms. McGray, Mr. Kokos. May it please the court, AUSA Donovan Kokos on behalf of the United States. Uh, if you all don't mind, I'd like to continue with this, this second enhance, however you want to order your time. Um, to answer a question, I think you, Judge Smith have it. Yes, this is contingent on a government motion. And the reason that matters, especially here, and it goes to the standard of review is if you look at page 460, which is the only place I see anything mentioned about the B, uh, the extra point on B, the defendant is asking the district court to simply give me the third point, one thing we know post 2003 amendments, because prevent pre those amendments, the court did have the discretion under, under B, but now post 2003, one thing that must happen is the government must move. We must do it voluntarily or somebody must compel us to move. So I don't know how. And that is, I mean, that, that last point is one that, uh, I did want to follow up on frankly with, with both of counsel here, and that is, uh, there was no, another, uh, conspicuous, uh, omission, if you will, uh, is the fact that there was no motion to compel here, which would be one procedural way of seeking, uh, the remedy of the third point if the defense, uh, wanted it in the absence of any motion from the government, right? As far as I can tell, that would be the only way because we have to make a motion. So either we do it voluntarily or somebody makes us, but my point is, but well, I wanted to follow up and just should, should we consider, and I'm not, you know, I haven't thought this out, but in fact, it was largely a, a consequence of my insomnia last night. I was thinking about this and should we consider this court a supervisory rule in this context where if the third point is in question that the defense be required to come forward with a motion? Is that worth our consideration? I'm not asking for a strong position, but worth . . . I, I, I believe it is because I thought about the same thing, Your Honor. What, and where I think . . . Were you sleeping or was . . . I was actually sleeping, so I was on the clock while I was sleeping. So I think what the court should do is you begin with Drennan because that's the court's last word on this particular issue. So we can't withhold the point for reasons that are unconstitutional or not rationally related to legitimate government interest. Post-2013 amendment, I think that second category is narrower because the commission has said a legitimate government interest is confined to 3E1.1 as a whole. So the eighth, the 11th circuit case I cited, Johnson, is beautiful about this because it essentially says, well, post-2013 amendment, we don't know for sure what a legitimate government interest is. We know for sure it's not coercing an appellate waiver. My position is that we know for sure that what is within that interest, because it's in comment number one, is making sure that the government, that the government genuinely has accepted responsibility, and we can make that determination. Everything else in the middle is up for grabs. But let me just follow up with everything else in the middle being up for grabs, because don't we get to a point in time where the government can, it really changes some of their leverage at sentencing when they can say, if you are costing us our resources, and for that reason, we actually are going to withhold the third point. And so it strikes me that, I mean, are you going to say that, no, that's clear to one side or another? Yes, and I'll explain why, because I don't think, you know, let's say Mr. Williams, they aren't based on factual denials that the court later on turns out to have been true, or frivolous contestations, which to me would be legal, right? So if she says, this is not relevant conduct and that's frivolous, that's a frivolous contestation. If she says, I didn't actually threaten anyone with a gun, that's a false factual denial. I think we are fine in withholding the third point if one of those two things, or both. But again, that goes more to what you and your office would exercise their discretion towards, not what the rule and Drennan and other things would permit. And so let's just say that you and your office had a change of heart, and you said, we've got a new plan, and we want to go to the outer bounds of what's permitted. And this is what we're going to do. No third point. We are not moving. If you raise any motions, raise any objections, or contest any fact, if you do that, we don't think you've accepted responsibility. Is that, because at one level, you know, the nice thing about the text and the commentary is, is you kind of have to own all of it for purposes of legal argument, for policy, you don't have to own argument. And so your answer focused on kind of, well, policy, we might not go to the No, your honor, because so I think if we just apply Drennan, this is why I assume we're here, because Drennan, I think needs to be amended on that second prompt, the legitimate government interest prompt, because the sentencing commission has narrowed it. So to answer your honor's question, I think now, we couldn't just withhold the point for any reason or no reason. In my view, that wouldn't be a legitimate government interest anyway, it'd be assuming the resources aren't an issue, we're constrained to withholding it only if we see a conflict between granting it, but, but, but, but, but again, once you start down that road, you've given a lot away for, for your opponent who says, well, it has been amended. And let's look at that phrase about trial and, and, and here trial was not in play. And so now aren't you in a really, really bad box where if Drennan has to be for a legitimate government interest, and one of the biggest indicia that we have in subpart B or paragraph B is avoiding trial, and that's what happened here. Then maybe there's a problem. It might not be plain. I mean, assuming that it's plain error review, but there might be an error here. No, your honor. So I'll tell you, I don't think I'm giving anything away. I'm just trying to reconcile Drennan with the amendment, the 2013 amendment. I think it's clear now that it says we should not withhold it for a reason outside of 3E1.1 as a whole. Well, but, but the, the result of that fortunate or unfortunate is it leaves all the discretion to you. And so now I can answer the question you originally asked your honor, which is, I suppose this is presented to the district court. The government is withholding this for a reason outside an interest in the guidance. We may then, I guess, be asked to articulate our reason, but I think the defendant should have to make a substantial showing first as he or she would in a 5K context. Okay. And only then. That's the way the defense can, I won't say circumvent, but can avoid a unilateral determination being made here entirely by the government. Correct. Because this has to be reviewable. Sure. And look, I will, I will say I have no doubt that this is, this was just one of the numerous occasions that Judge Roth and I have witnessed over a lot of years of Congress demonstrating that they don't trust federal judges to make decisions, but they trust prosecutors better to better make certain decisions. So they take a discretionary area away from a district judge and allow it to be exercised instead by a prosecutor. Okay. I didn't like it when it happened. I'll be very candid about that. But it happened and we have to read the language for what it is. But as I understand your position on this or your response to me is you agree that one way of actually getting this into the hands of the district judge, so the judge can consider appropriate factors, is for the defense to tee it up. Yeah. I think the defense has to tee it up by asking, by bringing a motion to respond to you, Judge Phipps, which is a legitimate government interest isn't just the trial preparation. Remember, it's everything in the whole guideline and one of them is making sure the defendant isn't falsely denying or frivolously contesting relevant conduct. So we can say, just as AUSA Conway did here, yeah, this isn't a trial prep issue. This is an issue where the defendant has said, I didn't say or do X, Y, or Z, and the district court has found, yes, you did to all things. Judge Roth, I did not mean to speak for you as I expounded upon my grievance with Congress in some matters, but I just meant a reference that we've, over a long, over long tenures, witnessed certain examples of that. I agree with you wholeheartedly. Well, and the pendulum has swung back a little bit. Yes, 2003 Congress moves this to us, but what Congress giveth, the commission taketh a little bit away because in 2013 the commission's saying, all right, yes, but don't do it for a reason outside the interest of the guideline, such as the appellate waiver thing. Beyond that, it's up for grabs, except it's my contention, it's not up for grabs is we can still withhold it if we can point to something and say, the defendant falsely contested facts relative to, pertinent to relevant conduct, frivolously denied certain conduct. Um, you know, that, that's where I think we are. But, but, but yeah, I, I, you know, maybe they took more away than, than, than you're letting on though, because, you know, this, this Part B talk is, is really premised on guilty plea. That, that it, it, you know, timely notifying authorities of his intention to enter a plea of guilty. But if you read it strictly that way, Your Honor, then why, what's the difference between A and B? I think the B comes with not only trial preparation, but at the Jordan case I cited, said the government and the court must be satisfied the defendant has generally accepted the law. Well, don't, don't, surely you see a substantial distinction between language that is so broad as to talk about a demonstration of acceptance of responsibility, which clearly can occur in, in many ways through various forms of language and expression. And the more particular and narrower circumstances of subsection B, where it's avoidance of preparing for trial. And then the more interesting use of the conjunctive and permitting the government, not or, and permitting the government and the court to allocate the resources efficiently. Agreed. And yeah, I think that's, so I've seen circuits parse that even and say, well, so now you can bring in contested sentence, suppression hearings. I don't think the court has to decide that today. I just think, you know, you have to narrow. I'm sorry if I'm interrupting, but could, could a court give a two point reduction under A if there wasn't a guilty plea? Could there be a trial? Yes. Yes. There, there are cases that say that. There are cases that say that. Yeah. And so, so, so then isn't that the difference between A and B? A keeps it open and then B says, we need a guilty plea and everything centers around that guilty plea. And here there's a guilty plea. Right. But B also says right at the outset, the defendant has to qualify under A and there's nothing in there that says the district court's determination that the defendant gets the two points settles that issue. If the commission had wanted to do that and would have worded this like the cooperation results in a reduced sentence as determined by the court. You see that that's why this to me. So, so I mean, that's interesting because if it qualifies under A at one level, you could say if it qualifies under A to the sentencing court satisfaction, or you could say if it qualifies under A to the government's satisfaction and at one level, if it's the former, then it seems to reduce to just a guilty plea sort of analysis. If it's the latter, then, then everything you say kind of falls into place, but, but, but you need that initial language to go your way for it to fall into place for you. Right? Different circuits that said that it has. So not only Jordan and in the, I think actually there was a, I can't remember his eighth or 11th circuit, but you have, uh, the first, the second, the fifth, the sixth, the seventh, the 10th. And, uh, Jordan was the eighth circuit. Jordan was the eighth circuit. Jordan was the eighth circuit. So you had, and, and the sixth circuit case is called lapses. It uses a slightly different formulation. Uh, but basically the bottom line is the government and the court have to be satisfied about this. And the reason is we're the ones making the motion. So imagine we don't agree. Let's say we don't agree like here. We don't agree with the A, right? But the court finds it. So now do we have to make the motion? We're making a motion we disagree with. So would we have waived any objection? Not only to A, but to B, right? Now I can't help, but express, uh, the, the, to me, uh, irony. And maybe it's just my reading of all of the circumstances that were brought forth in the record. But it's possible that there's a stronger case for the one point than there was for the two points here, given the breadth of acceptance of responsibility and the various attempts by the defendant, apparently to run away from certain, uh, uh, acts of responsibility, uh, or certain acts that would suggest a lack of responsibility. Well, maybe if you view those as completely independent and not sequential, because there's a case out of the second circuit, I didn't cite called Vargas, which essentially goes through the history of, you know, 2003, the protect act. And what happens right now is, um, Vargas says the whole reason the, that the third point was broken out was to allow the government to reward a defendant who's cooperated more or given us more acceptance of responsibility than just the two points, but less than the five K. So it's supposed to be like a middle ground. And that's to me, consistent with the language of B because you've got to have qualified under B plus, qualified under A plus. Before we move to the other issue in this case, Judge Roth, do you have other questions, uh, with respect to 3E1.1 acceptance of responsibility? No, I don't. Nor do I. All right. Thank you. So transition to the next one. Yes. Okay. So for the 3B, uh, enhancement, one thing I want to point out that I fear is getting muddled and I might be partly responsible for that is, so the district court in its finding of B says right out of the box, well, the Herndon conduct alone is enough, but what I want to emphasize is the Herndon conduct is 2010 to 2012. Okay. And that's, you know, that's the whole issue with the 12 people recruited to go see him and, you know, they're told which drugs to get, when to go, and they bring those back to Adair who then pays them some and sells them. That to me seems all by itself, clearly enough for the leadership enhancement because relevant conduct alone is enough. This court said that in Sepharadi in 2000, and that's consistent with the, uh, the intro to that section of the guidelines. But where the court, so this is where the court says the defendant's role was primarily that of a broker. Each time the court says it, it's qualified. It says as a broker during the timeframe of the intercepts or during the period of the, of the conspiracy. Well, that matters because that's February to May, 2016. So I'm willing to say there's a lot of evidence of her brokering. But the reason that's even possible is because of what happens between 2012 and 2016. So 2012, Dr. Herndon goes down because we indict him. The rest of that year, Adair is kind of at sea trying to find another doctor who will be this, you know, free with the scripts. By 2013, she finds Dr. Painter and that's the person she uses throughout, but she appears to have learned a valuable lesson, which is that you can't put all your eggs in one doctor. So what she begins doing after this, and you can see this through the I think Saunders, but bottom line is she meets people out socially who are older, who have good insurance through Medicare or whatever, and she's able to persuade them to either give them some of her pills or get pills to sell to her. And so we don't know how many, that's not part of the 12. We don't know how many were involved in that. We know, you know, this report listed four or five. But the bottom line there is that's a different set of conduct. And yes, to answer your question right out of the box, the word brokering isn't very helpful. I was just about to ask you if you agree that it might be worthy of a sentence or two and an opinion from this court that we ask district judges to not engage in the use of characterizations, nouns, if you will. Brokered is not one of the ones that appears in the guidelines, but kingpin is not helpful. Well, no, and it really, it's kind of our fault because, you know, our AUSA used that word and the district court adopted it, but you have to look around, you know, the other four pages of that finding on the leadership enhancement, the court says, you know, yeah, she brokered, but here's what she does. And, you know, essentially, so she describes her work as, you know, I do this like clockwork, right? And that stuck in my mind because the emphasis to me is on the work. This is not like a deist clock that's perfect when made and it runs flawlessly at the end of time. This is a clock full of flawed parts, human beings, and often cases, human beings who are addicted to opioids. And so she, that's where her potent hustle skills come in. So she has to call them on a monthly basis and say, time to get your medication, Zurich is driving them or Bowles. And so she's the one making these, these transactions happen. That's more than a broker to me because these don't have, the broker to me is you're sitting back and you're going, okay, you need this, you need that. Instead, she's actually making this happen. And the reason that's good for her, the reason this second phase of this, this project she has is good for her, is these, if you look carefully at the during this latter phase of it, all have different doctors, which is beautiful because now your eggs are not all in a Dr. Herndon. If one of those goes down, all right, you've got other doctors. And by the way, because these other women have other doctors, you can kind of file in the back of your mind who they are. If you need another doctor, if your own goes down, Dr. Painter in this case. So that's why I think this is, you know, yes, it's true during the timeframe of the conspiracy, you do see some brokering. But if you look at page 91, I want to say of this record, there's a list of like 42 different transactions over that last couple of years, only two of them involve brokering for a total of 20 pills. The other 40 involve not brokering for about 1200 and 1206 pills. So, you know, again, it's our fault. We put the word in the court's mouth. I don't think it's, it matters here because of the court was so conscientious. Well, that's, yeah, that's the point because other activities were the basis of fact based determinations by the court. But I, my concern has been that we dissuade courts and advocates, as you've suggested, from leaning too much on characterizations, on conclusory characterizations. Yeah, it would be helpful. Judge, Judge Roth, do you have further questions of Mr. Kokos? No, I don't. Nor do I. All right. Thank you very much, Mr. Kokos. Ms. McGrain, we'll have you back on rebuttal, and I'm going to be fairly strict about applying the clock since we've been arguing this for just shy of an hour, which, you know, I think demonstrates the fact that the panel is into this case. Yes, Your Honor, I just have two very brief comments. One, I think the government agrees that Amendment 775 constricts their authority under 3E1.1B, and Congress made it clear that it should be so limited. And if we look at 3E1.1 as a whole and the government can withhold the motion for falsely or frivolously contesting relevant conduct, I just think we need to keep in mind that the standard at sentencing is a preponderance of the evidence, and that's a low standard, and that that doesn't mean a defendant just has to sit back and take every enhancement. That they plead guilty, the pre-sentence report comes out, and they have to accept everything that's said by the government as far as enhancements. They get to bring good faith challenges to the evidence, both factual and legal, and that's what defense counsel did in this case when he was contesting the confidential sources credibility, when he was contesting whether or not Ms. Adair was actually saying these things or whether she was boasting, and she's a female drug dealer in this context. And so I think those were legitimate challenges. And then as far as the leader organizer, I would just go back to the idea of where was the control in this case? There just wasn't any, and that she was not calling the shots, she was taking advantage of the situation. And that's everything I have. Thank you very much, Ms. McGrain. Thank you, Mr. Kokas. The matter was very well argued, and we'll take the case under advisement. Thank you.